

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**10/15/2014**

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| GARY B. WADE, | ) | CASE NO. 10-31139-H3-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| RODNEY TOW, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. NO. 11-3625 |
| | ) | |
| GARY B. WADE SR., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a trial of the above captioned adversary proceeding.  The following are the Findings of Fact and Conclusions of Law of the court.  A separate conforming Judgment will be entered.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

A.  <u>Procedural History</u>

Gary B. Wade ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 9, 2010.  A Chapter 7 discharge was entered on December 11, 2010.  Rodney Tow ("Plaintiff") is the Chapter 7 Trustee.

On December 9, 2011, Plaintiff filed the complaint in the instant adversary proceeding.  In the first amended complaint in the instant adversary proceeding, Plaintiff seeks revocation of Debtor's discharge.  Plaintiff also seeks a declaratory judgment determining that Debtor is the owner of Defendant AAA Treasure International Company, Inc. ("AAA"), and the turnover to the bankruptcy estate of AAA and its assets.  Plaintiff also seeks a declaratory judgment determining that real property located at 4833 Winnetka and 4837 Winnetka, Houston, Texas, is property of AAA.  Plaintiff also seeks avoidance and recovery of what he believes to be a fraudulent transfer of real property located at 3213 Fuqua, Houston, Texas, to Defendant Rochelle Lang.  Plaintiff also seeks a declaratory judgment determining that real property located at 14531 Buffalo Speedway, Houston, Texas, is property of the bankruptcy estate. (Docket No. 16).

Debtor and AAA filed answers, denying the material allegations of the complaint.  (Docket No. 27, 28).

Lang filed an answer, denying the material allegations of the complaint, and asserting as affirmative defenses that she is not an "insider" as defined by the Texas Uniform Fraudulent Transfer Act; her ownership of entities was not the result of any transfers of stock owned by Debtor; no transfers were made by Debtor with intent to hinder, delay, or defraud any creditor of the Debtor; any alleged transfers were made in exchange for

2

reasonably equivalent value; and the alleged transfers were in the ordinary course of business.  (Docket No. 26).

       B.  <u>AAA</u>

Trustee asserts that Debtor is the owner and sole shareholder of AAA, or alternatively is the <u>de facto</u> owner of AAA.  (Docket No. 16).  Debtor's schedules do not reflect an ownership interest in AAA.  (Plaintiff's Exhibit 2).

       1.  <u>Operations of Houston Omni</u>

Debtor testified that he has been in the pipe business since 1984.  (Tr. 11/20/2013, at p. 78).  He testified that he owned 100 percent of the stock of Houston Omni USA Companies, Inc. ("Houston Omni").  (Tr. 11/18/2013, at p. 124).

Houston Omni was incorporated in 1997.  Its initial incorporator was Dianne Taylor.  (Plaintiff's Exhibit 7, at p. 15994-15996).  Debtor testified that Dianne Taylor is his sister. (Tr. 11/18/2013, at p. 126).

As of 2002, Houston Omni's principal office was located at 1909 Scott St., Houston, Texas.  (Plaintiff's Exhibit 7, at p. 16001).  Debtor testified that he acquired the property at 1909 Scott Street, which was a warehouse located near downtown Houston, Texas, and converted the space to a business complex. He testified that he leased seven or eight different parts of it to different companies.  He testified that half of the space was a club, restaurant, and entertainment center, in which he was

grooming talent for the entertainment business.  He testified
that the other half of the space contained his office, a barber
and beauty shop, and a sound recording company.  (Tr. 11/20/2013,
at p. 25-26).

Debtor testified that all of the tenants in the space
at 1909 Scott Street shared the same phone number.  He testified
that whoever subleased space at the 1909 Scott Street location
used the same phone number.  (Tr. 11/20/2013, at p. 27).

During some of the time prior to 2005, Lang was a vice
president of Houston Omni.  In Houston Omni's franchise tax
public information report, dated December 11, 2003, Lang was
identified as a vice president of Houston Omni.  The report was
signed by Debtor.  (Plaintiff's Exhibit 7, at p. 16003).

On April 26, 2004, Houston Omni changed the address of
its registered agent to the 1909 Scott Street location.  Taylor
remained as the registered agent.  (Plaintiff's Exhibit 7, at p.
16004).

Houston Omni's franchise tax public information report,
dated July 29, 2004, identified Debtor as president of Houston
Omni, and Lang as vice president of Houston Omni.  The report was
signed by Lang.  (Plaintiff's Exhibit 7, at p. 16005).

The court takes judicial notice that Houston Omni filed
a voluntary petition under Chapter 7 of the Bankruptcy Code on
April 30, 2004.  Lang signed the petition in the Houston Omni

4

Chapter 7 case.  (Docket No. 1, Case No. 04-36253-H1-7).[1]

2.  Operations of AAA

On May 10, 2005, AAA was incorporated.  The articles of incorporation for AAA list Debtor as the incorporator and registered agent of AAA.  (Plaintiff's Exhibit 8, at p. 02802-02803).

Debtor testified that he directed his brother to file the articles of incorporation for AAA.  (Tr. 11/18/2013, at p. 128).  He testified that he did not see the articles of incorporation before they were signed.  (Tr. 11/18/2013, at p. 129).  Lang testified that she authorized Debtor to file the articles of incorporation for AAA on her behalf.  (Tr. 11/18/2013, at p. 52).

On October 27, 2005, Debtor filed an assumed name certificate with the County Clerk of Harris County, Texas, identifying Debtor as the owner of Omni Pipe & Supply Co. (Plaintiff's Exhibit 10, at p. 00007).  Debtor testified that he filed the assumed name certificate for Omni Pipe & Supply Co. in order to try to "capture the name."  (Tr. 11/18/2013, at p. 134).

On March 13, 2006, Debtor opened a deposit account at Unity Bank for Omni Pipe and Supply Corp.  (Plaintiff's Exhibit

---

[1]The court notes that Lang is identified in the Houston Omni Chapter 7 petition as "Rochelle Lane."

10, at p. 00009).[2]

AAA opened a deposit account at Unity Bank on June 28, 2006.  Debtor initially was the sole person with signatory authority on the AAA Unity Bank account.  (Plaintiff's Exhibit 10, at p. 00001).

AAA opened a deposit account at Texas Capital Bank, N.A. ("TCB") on December 10, 2008.  The persons with signatory authority on the initial account were Lang and Debtor.  (Plaintiff's Exhibit 13, at p. 09259).  The initial account at TCB was closed, and consolidated with another account at TCB, on or about December 10, 2009.  The persons with signatory authority on the consolidated account were Debtor and Samori Diallo.  (Plaintiff's Exhibit 13, at p. 09260, 09267, 09336).  Lang testified that Samori Diallo is Debtor's son.  (Tr. 11/18/2013, at p. 24).

Lang testified that she owns AAA, and has always owned AAA.  (Tr. 11/18/2013, at p. 51).  She testified that there is only one stock certificate for AAA.  (Tr. 11/18/2013, at p. 59).  The stock certificate, dated June 10, 2005, shows that Lang owns 100,000 shares of AAA.  The certificate bears the signatures of Debtor and Lang.  (AAA Exhibit 2).

---

[2]The court notes that the name given for the Unity Bank account of Omni Pipe and Supply Corp. is similar to, but slightly different from that in Debtor's assumed name certificate, Omni Pipe & Supply Co.

Lang testified that AAA had two lines of business:
purchasing and selling pipe, and real estate.  She testified that
she is a licensed real estate agent.  She testified that she
locates properties to remodel and sell or lease.  (Tr.
11/18/2013, at p. 53).  She testified that she operates the real
estate side of AAA on a day to day basis.  (Tr. 11/18/2013, at p.
54).

With respect to AAA's pipe business, Lang testified
that Debtor taught her the different sizes and types of pipes,
and introduced her to potential clients.  She testified that she
gave Debtor broad authority to act on behalf of AAA.  She
testified that she authorized Debtor to file paperwork on AAA's
behalf, and run the pipe division of the business.  (Tr.
11/18/2013, at p. 55).

On September 26, 2012, AAA filed an assumed name
certificate with the Texas Secretary of State, identifying Omni
Pipe Solutions as an assumed name of AAA.  (Plaintiff's Exhibit
8, at p. 02815).

Lang testified that she appointed Debtor as president
and treasurer of AAA.  She testified that Debtor is presently the
president of AAA.  She testified that Debtor is not employed by
AAA.  (Tr. 11/18/2013, at p. 56).

Lang testified that Debtor has been her mentor since
she started her business during 2005.  She testified that Debtor

7

has been a consultant to her.  She testified that Debtor does not
receive a salary, but that AAA has paid Debtor's business
expenses.  (Tr. 11/18/2013, at p. 57).

### 3.  Capitalization of AAA

On July 17, 2006, Debtor transferred $72,230.68 from
Houston Omni to AAA.  (Plaintiff's Exhibit 10, at p. 00029,
00177).

Lang testified that she initially invested
approximately $10,000 into AAA.  (Tr. 11/18/2013, at p. 61).  She
testified that AAA commenced doing business in 2005.  (Tr.
11/18/2013, at p. 70).  She testified that, during 2007, after
she sold property for a net profit of approximately $80,000, she
invested between 80 and 90 percent of that profit into AAA.  (Tr.
11/18/2013, at p. 62).

Prior to July 10, 2007, AAA moved into real property
located at 3213 Fuqua, Houston, Texas.  (Plaintiff's Exhibit
14C).  Lang testified that she owns the property at 3213 Fuqua in
her individual capacity.  She testified that AAA has had its
business office at 3213 Fuqua since 2007.  (Tr. 11/18/2013, at p.
75-76).

### 4.  Corporate Records of AAA

The minutes of AAA's board meetings are in evidence.
The minutes of the meeting conducted on June 10, 2005 indicate,
inter alia, that Lang was elected as Chairman, Secretary, and

Treasurer of AAA.  Debtor was elected as President of AAA.  The minutes indicate that 100,000 shares of AAA, at no par value, were issued to Lang.  (Plaintiff's Exhibit 14A).

The minutes of the meeting conducted on June 10, 2006 indicate, <u>inter alia</u>, that Debtor resigned as incorporator, and maintained titles of "Orator, President, Secretary, and Consultant/Advisor at no compensation so long as it is done in good faith to enhance the image of the Corporation."  The minutes indicate that Debtor was to explore steel pipe ventures, and Lang was to explore real estate ventures.  (Plaintiff's Exhibit 14B).

The minutes of the meeting conducted on July 10, 2007 indicate, <u>inter alia</u>, that the property at 3213 Fuqua "was purchase [sic] and that the property would be used as the Business Office for the Corporation."  The minutes indicate that Deandra Wade is the President and registered agent of AAA.  The minutes include a resolution adopting an assumed name of Omni Pipe Solutions for AAA.  The minutes reflect the election of Samori Diallo as a director and Vice President of AAA. (Plaintiff's Exhibit 14C).

The minutes of the meeting conducted on June 10, 2008 indicate, <u>inter alia</u>, that Debtor once again became President of AAA, while Lang remained the Chairman, Treasurer, and Secretary. (Plaintiff's Exhibit 14D).

The minutes of the meeting conducted on June 17, 2009 indicate, _inter alia_, that Samori Diallo was hired with compensation as Secretary of AAA.  However, the minutes also indicate that Debtor was elected as Secretary of AAA. (Plaintiff's Exhibit 14E).

The minutes of the meeting conducted on July 29, 2011 indicate, _inter alia_, that Samori Diallo was elected as President of AAA.  The minutes indicate that the meeting was conducted at the Sandals Royal Bohemian Hotel, in Nassau, Bahamas. (Plaintiff's Exhibit 14G).  Lang testified that she "just decided to hold the meeting in the Bahamas."  (Tr. 11/18/2013, at p. 80).

The minutes of the meeting conducted on August 22, 2012 indicate, _inter alia_, that Samori Diallo was removed as a signatory on AAA's bank account at TCB, and that Lang would now have primary signatory authority on the account.  (Plaintiff's Exhibit 14H).

The minutes of the AAA board meetings in 2005, 2008, and 2010 reflect that Lang acted as Secretary of the meeting. (Plaintiff's Exhibits 14A, 14D, 14F).  The minutes of the AAA board meetings in 2006, 2007, 2009, 2011, and 2012 reflect that Debtor acted as Secretary of the meeting.  (Plaintiff's Exhibits 14B, 14C, 14E, 14G, 14H).

Lang testified that she created the meeting minutes for 2006, 2007, 2008, 2009, 2010, 2011, and 2012.  She testified that

the meeting minutes were created on or about the date of each
meeting.  (Tr. 11/18/2013, at p. 29-39).

> 5.  <u>Deposition Testimony of Dawn Sykes</u>

The deposition of Dawn Sykes is in evidence.  Sykes
testified that Debtor directed her to remove minutes from the AAA
corporate book, and rewrite them, with some of the identities of
officers changed.  She testified that Debtor discarded the
original minutes by putting them into a shredder.  (Plaintiff's
Exhibit 29, at p. 92-93).

Sykes testified in her deposition that Debtor had told
her that he was the owner of AAA.  (Plaintiff's Exhibit 29, at p.
45).

Buckeye Retirement Co., LLC, Ltd. ("Buckeye"), which is
the plaintiff in a separate adversary proceeding in the instant
Chapter 7 case, conducted the deposition of Sykes.  The Plaintiff
in the instant adversary proceeding was not present or
represented at Sykes' deposition.  None of the Defendants in the
instant adversary proceeding were represented at Sykes'
deposition.  (Plaintiff's Exhibit 29, at p. 2-3).  Sykes was not
available for trial of the instant adversary proceeding.

Debtor testified that Sykes worked for AAA for
approximately ten months.  (Tr. 1/21/2014, at p. 39).  He
testified that Sykes requested that Debtor help her get a job at
AAA.  He testified that she was employed answering the telephone

11

at AAA.  (Tr. 1/21/2014, at p. 41).  He testified that, at the time Sykes began working for AAA, Sykes was homeless.  He testified that Lang allowed Sykes to move into one of her rental properties.  (Tr. 1/21/2014, at p. 41-42).

Debtor testified that he believed Sykes wanted to develop a personal relationship with Debtor.  He testified that she believed that she was entitled to special treatment.  (Tr. 1/21/2014, at p. 42-43).

Debtor testified that he never altered documents of AAA.  He testified that he did not have access to the documents. (Tr. 1/21/2014, at p. 44).

Debtor testified that Sykes stated, at the time she left AAA, that she would "get me and Rochelle and AAA and anybody associated at any costs."  (Tr. 1/21/2014, at p. 44).

In her deposition, Sykes acknowledged that she has served time in prison.  (Plaintiff's Exhibit 29, at p. 133).[3]

6.  <u>CIT Business Records</u>

Plaintiff's evidence in the instant adversary proceedings includes the business records, authenticated by business records affidavits, of CIT Small Business Lending Corporation ("CIT").

The business records of CIT contain a printed form, titled "CIT Small Business Lending Corporation Request for Credit

---

[3]The nature of Sykes' offense is not in evidence.

Approval."  The document identifies the owner of AAA as "Gary Wade."  The document is not signed.  (Plaintiff's Exhibit 11, at p. 08917).

 The business records of CIT also contain what purport to be Form 1120S income tax returns for AAA for 2004 and 2005. The purported tax returns identify AAA's shareholder as "Gary Wade."  (Plaintiff's Exhibit 11, at p. 08927-08940).

 The business records of CIT also contain what appears to be a letter, dated February 15, 2007, from CIT to Debtor providing a proposal for discussion purposes.  The letter has an acknowledgement of acceptance, dated February 16, 2007, purportedly signed by Debtor.  The letter provides that Debtor must sign the letter, and provide a check in the amount of $1,500, on or before February 22, 2007, or the proposal will become null and void.  (Plaintiff's Exhibit 11, at p. 08945-08947).

 The business records of CIT also contain a check, from AAA to CIT, signed by Debtor, in the amount of $1,500. (Plaintiff's Exhibit 11, at p. 08949).

 Debtor testified that he did not sign the purported Form 1120S tax returns for AAA.  (Tr. 11/19/2013, at p. 16-17). He testified that he had never seen the February 15, letter prior to the instant proceeding.  He testified that what purports to be his signature on the acknowledgement of acceptance is not his

signature.  (Tr. 11/20/2013, at p. 43).  Debtor testified that he
did sign the $1,500 check.  (Tr. 11/19/2013, at p. 19).

Debtor testified that he never uses the name "Gary
Wade."  He testified that he always is referred to as "Gary
Bernard Wade," or "Gary B. Wade."  (Tr. 11/20/2013, at p. 30).

Debtor testified that he has never requested a loan
from CIT.  (Tr. 11/20/2013, at p. 41).  He testified that he
believes the loan package was submitted to CIT by a person that
encouraged him to obtain a loan.  (Tr. 11/20/2013, at p. 33).  He
testified that he gave the person who was preparing the loan
package a check, and an affidavit, but he does not recall
providing the information for a loan package.  (Tr. 11/20/2013,
at p. 53).  He testified that he had no idea the lender was CIT
until he issued the $1,500 check.  (Tr. 11/20/2013, at p. 41).

### 7.  Buckeye Business Records

Plaintiff's evidence in the instant adversary
proceedings includes the business records, authenticated by
business records affidavits, of Buckeye.

The business records of Buckeye include the CIT loan
application; purported 2002, 2003, 2004, and 2005 Form 1040 tax
return for Debtor; purported 2004 and 2005 Form 1120S tax returns
for AAA; a certificate of incorporation for AAA; articles of
incorporation for AAA; the 2005 certificate of assumed name for
Omni Pipe & Supply Co. as owned by Debtor; and a certificate

14

identifying Omni Pipe & Supply Co. as a Certified Minority Business Enterprise.  (Plaintiff's Exhibit 12).

The loan application purports to bear Debtor's signature.  Debtor testified that the signature on that document is not his signature.  (Tr. 11/19/2013, at p. 27-28).  Debtor testified that his purported signature on what purports to be his personal 2005 tax return is not his signature.  (Tr. 11/19/2013, at p. 29).  He testified that his purported signature on the 2004 and 2005 purported tax returns for AAA is not his signature. (Tr. 11/19/2013, at p. 30-31).

### 8.  Use of AAA Funds to Pay Debtor's Expenses

On January 29, 2009, AAA paid $692.01 to the Harris County Tax Assessor-Collector for property taxes with respect to property located at 7906 Grandview.  (Plaintiff's Exhibit 28). Debtor testified that he owns an interest in the property at 7906 Grandview, and claims the property as his homestead.  (Tr. 11/20/2013, at p. 22-23).

On July 30, 2009, AAA paid $5,000 to the law firm of Zimmerman, Axelrad, Meyer, Stern and Wise.  (Plaintiff's Exhibit 13, at p. 09377).  Debtor testified that David Scott, of that firm, represented Debtor, in a deposition taken on September 17, 2009.  (Tr. 11/20/2013, at p. 11).

On October 14, 2009, AAA paid $5,000 to Kent Schaffer. (Plaintiff's Exhibit 13, at p. 09533).  Debtor testified that AAA

15

paid Schaffer, an attorney, on Debtor's behalf, with
authorization from Lang.  (Tr. 11/20/2013, at p. 14).

    C.   <u>Properties at 4833 Winnetka and 4837 Winnetka[4]</u>

Trustee asserts that the properties located at 4833
Winnetka and 4837 Winnetka are owned by AAA.

Lang testified that she initially purchased 4833
Winnetka, and then conveyed it to AAA.  (Tr. 11/18/2013, at p.
77-78).  She testified that AAA purchased 4837 Winnetka.  (Tr.
11/18/2013, at p. 78).  She testified that AAA owns both
properties, and pays the taxes on both properties.  (Tr.
11/18/2013, at p. 85).

Lang testified that she currently resides at 4833
Winnetka.  (Tr. 11/18/2013, at p. 101).  She testified that the
property at 4837 Winnetka has been rented out in the past, but
that there is currently no tenant in the property.  She testified
that she cannot recall when there were tenants at the two
properties.  (Tr. 11/18/2013, at p. 101-102).

Debtor testified that AAA used the properties at 4833
Winnetka and 4837 Winnetka to secure a loan on Debtor's behalf.
Debtor testified that he signed a a note, dated May 6, 2008, in
the original principal amount of $250,000.  (Tr. 11/20/2013, at
p. 18).  The note is in evidence.  (Plaintiff's Exhibit 23, at p.

---

[4]The court notes that in part of the transcript, the
transcriber phonetically spelled "Winnetka" as "Laneca" or "One
Echo."

16

02940-02941).  Debtor testified that he signed deeds of trust
with respect to the properties at 4833 Winnetka and 4837
Winnetka.  (Tr. 11/20/2013, at p. 18-19).  The deeds of trust are
in evidence.  (Plaintiff's Exhibit 27, at p. 02954-02960;
Plaintiff's Exhibit 23, at p. 02933-02939).  Debtor testified
that the printed name that appears on the note and each of the
two deeds of trust, "Gary Wade" is not his name.  (Tr.
11/20/2013, at p. 18).

        Debtor testified that he has never represented that he
owns the properties at 4833 Winnetka or 4837 Winnetka.  (Tr.
11/20/2013, at p. 90-91).

        The deeds of trust with respect to both properties
contain a representation that the grantor (in this instance,
Debtor) owns the property, and no other person or entity has any
ownership rights in the property.  (Plaintiff's Exhibit 27, at p.
02959; Plaintiff's Exhibit 23, at p. 02938).

        D.  Property at 3213 Fuqua

        In the amended complaint, Trustee asserts that Debtor
fraudulently transferred the property at 3213 Fuqua to Lang.
(Docket No. 16, at p. 10).

        Lang testified that she initially purchased the
property at 3213 Fuqua.  (Tr. 11/18/2013, at p. 63).  She
testified that only AAA's business is taking place at the 3213
Fuqua location.  (Tr. 11/18/2013, at p. 64).  She testified that

17

AAA pays the taxes, the mortgage, and the utilities for the property. (Tr. 11/18/2013, at p. 84).

Vincent Blanson, an operations manager employed by AAA, testified that he, Debtor, and Lang each have offices, and there are six to eight other employees of AAA, at the 3213 Fuqua location. He testified that there are no other businesses besides AAA at the 3213 Fuqua location. (Tr. 1/21/2014, at p. 79-80).

Lang testified that she conveyed the 3213 Fuqua property to Debtor on February 19, 2008. (Tr. 11/18/2013, at p. 40). She testified that she transferred the property to assist Debtor in trying to obtain a personal loan. She testified that Debtor did not, in fact, obtain the personal loan he sought. She testified that the property subsequently was transferred back to her. (Tr. 11/18/2013, at p. 84).

Debtor testified that he has never owned the property at 3213 Fuqua. (Tr. 11/20/2013, at p. 16). He testified that he lived in the property for a short time after Hurricane Ike struck the Houston area. (Tr. 11/20/2013, at p. 85).

The deed transferring the 3213 Fuqua property from Lang to Debtor on February 19, 2008 is in evidence. (Plaintiff's Exhibit 16). The deed transferring the 3213 Fuqua property from Debtor to Lang on December 4, 2009 is in evidence. (Plaintiff's Exhibit 17).

18

Lang testified that she did not receive any
consideration for the transfer of the 3213 Fuqua property to
Debtor on February 19, 2008.  (Tr. 11/18/2013, at p. 36).  She
testified that she did not pay any consideration for the transfer
of the 3213 Fuqua to her on December 4, 2009.  (Tr. 11/18/2013,
at p. 42).  Debtor's transfer of the property to Lang is listed
in Debtor's Statement of Financial Affairs (Plaintiff's Exhibit
2, at p. 00759).

E.  Property at 14531 Buffalo Speedway

Trustee asserts that the property located at 14531
Buffalo Speedway, Houston, Texas, is property of the bankruptcy
estate.

Lang testified that Debtor purchased the property for
her at auction.  She testified that she was unable to make it to
the auction because she had car problems.  (Tr. 11/18/2013, at p.
87).  She testified that the property ultimately was transferred
to AAA.  (Tr. 11/18/2013, at p. 87-88).

Lang testified that AAA paid the purchase price on the
14531 Buffalo Speedway property.  (Tr. 11/18/2013, at p. 95-96).

Debtor testified that he attended the same auction,
along with his niece, in order to help her purchase a property.
He testified that Lang was looking to purchase a property, and he
explained to them the auction procedures.  He testified that Lang
was to meet him at the auction.  He testified that the auction

19

procedures required a bidder to have at least $5,000.  He
testified that his niece had $5,000 cash, and a $5,000 cashier's
check.  He testified that his niece used the $5,000 cash on the
property on which she bid, and allowed Debtor to use the $5,000
cashier's check to bid on the property for Lang.  (Tr.
11/20/2013, at p. 65-66).  He testified that he posted the
cashier's check to hold the property, but that the purchase price
for the property was paid with a cashier's check in the amount of
approximately $63,000, drawn on AAA's account.  (Tr. 11/20/2013,
at p. 67).

　　　　F.  <u>Relationship Between Debtor and Lang</u>

　　　　Lang testified that she has known Debtor for at least
ten years.  (Tr. 11/18/2013, at p. 10).  She testified that
Debtor is a mentor to her, and a consultant to her company.  (Tr.
11/18/2013, at p. 11).  She testified that she was present in the
office of Houston Omni, and served as an officer.  (Tr.
11/18/2013, at p. 11-12).  She testified that Debtor does not
receive a salary, but that AAA pays Debtor's business expenses.
(Tr. 11/18/2013, at p. 57).  She testified that, while she was
away at Texas A&M University working on a masters degree, she
gave Debtor broad authority to run her business.  (Tr.
11/18/2013, at p. 57-58).  She testified that she did not
authorize Debtor to run his own personal business at AAA.  (Tr.
11/18/2013, at p. 65).

Lang testified that the $72,230.68 transferred by Debtor to AAA during 2006 was not for investment capital in AAA. (Tr. 11/18/2013, at p. 70).

Lang testified that she has never been married to Debtor. (Tr. 11/18/2013, at p. 88). She testified that she has not had a personal relationship of an intimate nature with Debtor. (Tr. 11/18/2013, at p. 88-89).

Debtor testified that he has never been married to Lang. (Tr. 11/18/2013, at p. 123; Tr. 11/20/2013, at p. 71). He testified, at the trial in the instant adversary proceeding, that he had previously testified that he was married to Lang. (Tr. 11/18/2013, at p. 123). He testified that, at the time of his deposition, he felt that the attorney who was examining him was badgering him, and that he was "out of control." (Tr. 11/20/2013, at p. 70).

Debtor testified that he met Lang at a business seminar, held at his church. He testified that he has been her mentor or father figure. (Tr. 11/20/2013, at p. 72-73).

Debtor testified that he may have previously testified at the meeting of creditors in the above captioned Chapter 7 case that he had a "dating off-and-on" relationship with Lang. (Tr. 11/20/2014, at p. 104). He testified that if he had said that, he "didn't mean it in a way of a relationship." (Tr. 11/20/2013, at p. 105).

G.   <u>Tax Information</u>

At the conclusion of the trial in the instant adversary proceeding, the court directed Plaintiff to supplement the record with the IRS transcripts regarding the apparent tax filings by Debtor and AAA contained in Plaintiff's Exhibit 12.   (Docket No. 176).

On June 27, 2014, Plaintiff filed a response, attaching the IRS transcripts.   The IRS transcripts indicate, <u>inter</u> <u>alia</u>, that no tax returns were filed for AAA for the years 2004 and 2005.   (Docket No. 194).

<u>Conclusions of Law</u>

Section 727(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee.

11 U.S.C. § 727(d).

A party attempting to revoke a debtor's discharge under 727(d)(1) must show 1) the discharge was obtained through fraud of the debtor, 2) the party requesting the revocation did not know of the debtor's fraud until after the discharge was granted, and 3) grounds exist which would have prevented the debtor's discharge had they been known.  United States v. Harrison, 366 B.R. 656 (S.D. Tex. 2007) aff'd, 273 Fed. Appx. 315 (5th Cir. 2008).

A material fraud, which would have resulted in the denial of a Chapter 7 discharge had it been known at the time of the discharge, can justify a subsequent revocation of that discharge.  See Jones v. U.S. Trustee, Eugene, 736 F.3d 897 (9th Cir. 2013).

The requirements of Section 727(d)(1) normally are read strictly in favor of the debtor, as revoking a discharge reinstates all debts and thus wholly deprives the debtor of the fresh start that Chapter 7 is intended to give him.  See In re Smith, 582 F.3d 767 (7th Cir. 2009).

The plaintiff has the burden of proving sufficient facts to sustain his claim by a preponderance of the evidence.  See In re Slack, 143 Fed. Appx. 628 (5th Cir. 2005), citing Beauboeuf v. Beaubouef (In re Beaubouef), 966 F.2d 174 (5th Cir. 1992).

The preponderance of the evidence means that the fact is more likely than not.  Matter of Briscoe Enterprises, Ltd. II, 994 F.2d 1160 (5th Cir. 1993).

In the instant adversary proceeding, Trustee contends that Debtor obtained a discharge by fraud, in that he concealed his ownership of AAA and the 14531 Buffalo Speedway properties, and that he made false oaths in his schedules and statement of financial affairs by omitting his ownership of AAA, his transfer of the 3213 Fuqua property, his ownership of the 4833 and 4837 Winnetka properties, and his ownership of the 14531 Buffalo Speedway property.

The evidence gives support to Trustee's theory with respect to AAA.  Prior to the formation of AAA, Debtor operated Houston Omni, with Lang as an officer.  Debtor deposited over $70,000 from Houston Omni into AAA's bank account, and offered no explanation of why he had done so.  Debtor incorporated AAA. Debtor had signatory authority over AAA's bank accounts.  Debtor used Omni Pipe & Supply Co. as an assumed name, and then AAA used a very similar name, Omni Pipe Solutions, as an assumed name. Debtor was the president of AAA.  AAA employed Debtor's brother, niece, and son.  Debtor used AAA funds to pay for property taxes on his homestead, and to pay two attorneys.  AAA purportedly filed tax returns signed by Debtor.

24

However, the evidence also gives support to the theory of Debtor and Lang, with respect to AAA. The business of Houston Omni, operating an entertainment venue, was different from that of AAA, buying and selling pipe and real estate. Both Debtor and Lang testified that Debtor undertook numerous actions on behalf of AAA at the direction and with the authorization of Lang. Lang provided funds for AAA's capital. AAA issued shares to Lang, but not to Debtor.

Given that the evidence supports Trustee's theory, and also Debtor's theory, with respect to the ownership of AAA, the court must make a determination based on the credibility of the evidence.

Debtor's credibility is less than complete. Debtor's testimony was primarily self-serving. Debtor's testimony at trial was at variance with his previous testimony regarding his relationship with Lang. The court accords some weight to Debtor's testimony.

Lang's credibility is less than complete. Lang's testimony was primarily self-serving. Lang was not in direct control of operations at AAA, including several years during which she resided out of town. However, the court accords greater weight to Lang's testimony than to that of Debtor.

Vincent Blanson's testimony was credible, with respect to the matters as to which he testified.

25

The credibility of the deposition testimony of Dawn Sykes is not complete.  Sykes was deposed by Buckeye, without representatives of Plaintiff, Debtor or Lang present.  Sykes was, according to the testimony of both Debtor and Blanson, a disgruntled former employee of AAA.  Sykes also acknowledges that she has served time in prison.  The court accords little weight to Sykes' testimony.[5]

The documents in the CIT and Buckeye business records, most notably including the purported AAA tax returns for 2004 and 2005, are not credible.  The IRS transcript indicates that no tax returns were filed.  The testimony and other documentary evidence indicate that AAA was formed in 2005.  Debtor's testimony indicates that the documents were prepared by someone other than Debtor.

In the instant adversary proceeding, the court is limited to the evidence presented.  The credible evidence supports, and makes relatively equally likely, both Trustee's theory and that of Debtor and Lang.  The court concludes that Trustee has not met his burden of proof as to Debtor's ownership

---

[5]The court's determination as to the lack of credibility of Sykes' testimony is based primarily on the fact that she was a disgruntled former employee of AAA.  That conclusion is somewhat bolstered by Sykes' acknowledgment that she has served time in prison, but only slightly so.

26

of AAA.[6]

As to the 14531 Buffalo Speedway property, the credible evidence is that Debtor acquired the property as a nominee for AAA, and that AAA paid the purchase price.  The court concludes that Trustee has not met his burden of proof as to Debtor's ownership of the 14531 Buffalo Speedway property.

As to the 4833 Winnetka and 4837 Winnetka properties, the only evidence supporting Trustee's theory is that Debtor purportedly pledged the properties to secure a loan.  There is no evidence of Debtor's ownership of the properties.  The court concludes that Plaintiff has not met his burden of proof as to Debtor's ownership of the 4833 Winnetka and 4837 Winnetka properties.

As to the 3213 Fuqua property, the evidence is that Debtor received a transfer of the property from Lang, for no consideration, and transferred the property back to Lang, also for no consideration.  The transfer from Debtor to Lang was disclosed in Debtor's Statement of Financial Affairs.  The court concludes that Plaintiff has not met his burden of proof as to Debtor's ownership of the 3213 Fuqua property,[7] concealment of

---

[6]The court does not affirmatively conclude that AAA is Lang's property.  The court concludes that Trustee failed to prove that AAA is or was Debtor's property.

[7]As noted below, however, Debtor's transfer of the property to Lang is avoidable as a fraudulent transfer.

the property, or false oath, with respect to the 3213 Fuqua property.  The court concludes that Trustee has not met his burden of proof with respect to revocation of discharge.

In the complaint, Trustee seeks avoidance and recovery of the allegedly fraudulent transfer of the property located at 3213 Fuqua.

Section 548(a) of the Bankruptcy Code provides in pertinent part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
>> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>>
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>>
>>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>>
>>> (III) intended to incur, or believed that the

28

> debtor would incur, debts that would be
> beyond the debtor's ability to pay as such
> debts matured; or
>
> (IV) made such transfer to or for the benefit
> of an insider, or incurred such obligation to
> or for the benefit of an insider, under an
> employment contract and not in the ordinary
> course of business.

11 U.S.C. § 548(a).

To determine actual intent to defraud under Section
548(a)(1), courts have identified several "badges of fraud": (1)
the lack or inadequacy of consideration; (2) the family,
friendship or close associate relationship between the parties;
(3) the retention of possession, benefit or use of the property
in question; (4) the financial condition of the party sought to
be charged both before and after the transaction in question;
(5) the existence or cumulative effect of the pattern or series
of transactions or course of conduct after the incurring of debt,
onset of financial difficulties, or pendency or threat of suits
by creditors; and (6) the general chronology of events and
transactions under inquiry.  In re Soza, 542 F.3d 1060 (5th Cir.
2008).  Not all, or even a majority, of the badges of fraud must
exist to find actual fraud.  Id.

In the instant case, Debtor had title to the 3213 Fuqua
property during the two years before the date of filing of the
petition.  Debtor transferred the property to Lang approximately
two months before filing bankruptcy, for no consideration.  There

29

is some evidence of a close personal relationship between Debtor
and Lang.  The evidence reflects that, notwithstanding transfers
of ownership, AAA remained in possession of the property.  The
court infers that the financial condition of Debtor was such that
he could not obtain a personal loan without having the property
(and in fact, was unable to obtain a loan, even with the
property).  The evidence  is insufficient as to the financial
condition of Lang.  The evidence shows a pattern of Lang's and
Debtor's transferring property between themselves to bolster
efforts to obtain financing.  Lang and Debtor were directors and
officers of businesses ostensibly owned first by Debtor and then
by Lang.  The court concludes, based on the totality of
circumstances, that Debtor had the intent to defraud creditors
when he transferred the 3213 Fuqua property to Lang.[8]  The court
concludes that Trustee should recover the 3213 Fuqua property, or
its value, for the benefit of the bankruptcy estate.[9]

---

[8]The court notes that the evidence indicates that Lang also
transferred the property to Debtor for no consideration.
However, Debtor's use of the property in attempting to obtain a
loan manifests his intent to assert ownership of the property
after Lang transferred it to him.

[9]Trustee also pleads for recovery of the property under
Texas Bus. & Comm. Code 24.005, under the avoidance and recovery
provisions of Section 544 of the Bankruptcy Code.  Texas law
recognizes similar badges of fraud to those identified above.  In
re L&D Interests, Inc., 350 B.R. 391 (Bankr. S.D. Tex. 2006).
The same analysis underlying the court's conclusions under
Section 548(a)(1) apply to Section 24.005 and Section 544.

With respect to the requests for declaratory judgment, Plaintiff has not met his burden of proof as to his assertions that AAA is owned by Debtor, or that the property at 14531 Buffalo Speedway is owned by Debtor.  Plaintiff has met his burden of proof as to the assertion that the properties located at 4833 Winnetka and 4837 Winnetka are owned by AAA.  The court concludes that the properties located at 4833 Winnetka and 4837 Winnetka are owned by AAA.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on October 15, 2014.


LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE